Judge Napton
delivered the opinion of the court.
It was settled at an early day in this State, that debts due by negotiable paper could be subject to the process of attachment, and this *585 has been regarded as the law ever since. The inconvenience of this ’doctrine, especially in the absence of any legislative provision by which the holders of the paper subsequent to the title of the defendant in the •suit can be brought into the litigation, is sufficiently -obvious, and was adverted to in some of the latter cases.
In Hill and McGunnegle vs. Scott and Rule, it was determined, that •the plaintiff must show affirmatively, that the bill was not transferred by the defendant previous to the service upon the garnishee, but it was mot decided what effect a transfer subsequent io the attachment would ■have upon the proceeding.
It seems, however, to have been the opinion of one of the judges, perhaps of all, that such a subsequent transfer would not affect the liability of the garnishee, and that the only course left to the subsequent •endorsee would be, either to interplead, or, if ignorant of the proceedings, to bring his action for money had and received against the plaintiff in the attachment.
The question upon which the present case turns is evidently new. In •none of the cases heretofore before the court, was there any instance of the creditor attaching the drawee of a bill of exchange before acceptance. In the settlement of this question, we are left to the general principles of the law merchant, modified only by our statutes which give this process of attachment.
A bill of exchange is an order upon the drawee, to pay a certain sum of money to the holder. Before the drawee accepts the bill, he is a stranger to the contract, and is not liable, (unless under particular circumstances) to any of the parties. If he has funds of the drawer in ■his hands, or has otherwise bound himself to meet the drafts, he is liable to the drawer for failing to accept. The drawer may sue him for re-'exchange and damages, but there is no privity between him and the ■payee or holder. The latter can maintain no action against the drawee. Chitty. Story.
But it is said, and no doubt correctly, that a bill of exchange, when the drawee has funds of the drawer in his hands i's a transfer by the drawer of this fund to the payee ; that this transfer creates in the payee, if not a legal, at least an equitable interest in this fund; and that courts of law and equity will protect the interests of this payee in the chose in action thus created. It is said that when the drawee is notified of the rights of the holder, he becomes liable, in some shape, to such holder, if his assent to consider himself so liable may be fairly inferred from the previous dealings of the parties. To this doctrine I see no objection. *586 It was first intimated, with certain qualifications, in Manderville vs. Welch, (5 Wheat.) and has since been acted upon in various cases cited, by the counsel.
None of the cases, however, relate to the acceptance of negotiable paper. They are cases of transfers of book accounts, promissory notes, or some other kind of property, where the assignee of the fund or property gives notice of his interest, and the possessor expressly or impliedly assents to the transfer, and assumes expressly or impliedly a liability to the assignee. All the cases cited admit that there must be an assent, express or implied. But where is the implication of assent under the facts in the present case ? The bank had not accepted the draft, when she was garnisheed. She had by her previous course of dealing in relation to these drafts, impliedly agreed to accept all drafts of the kind—hut when, and for whose benefit ? Certainly when properly presented, and for the benefit of the holders at the time of presentment.At the time she was garnisheed, she was not the debtor of Colburn and Smith. She was apprised that they were the holders of a government draft, which she was bound to accept when presented—but she was-bound to accept in favor of the holder who presented it. This is all the implication that the previous dealings of the parties was calculated to create—in fact, the conduct of the bank, at the time the bill was presented by Lewis, was an obvious indication of intention to pay the bill to the holders at the time of presentment. The bill was payable at sight. Some of the consequences of holding the bank a debtor to all holders of drafts never presented or accepted, may not be unworthy of consideration. The United States, it would seem from the testimony, has occasion to keep large amounts of funds in this bank, by what authority I shall not stop to inquire. Her officers or agents are authorised to draw upon this fund to meet her liabilities at various places, and to various persons. If the creditors of these holders of government drafts can arrest this fund in the vaults of the bank, before she has accepted the drafts, the inconveniences to the bank might be readily foreseen. Her ordinary business might be suspended, and her officers chiefly employed in making out answers to attachments like the present, and in defending herself in a scramble between debtors and creditors with whom she has no concern. Her capacity for the commercial purposes, which it is presumed her charter was intended to subserve, would be paralized.
It is conceded that the bank may be garnisheed, but can she be considered as the debtor of all persons holding drafts on her, unaccepted ? *587 it will be recollected also, that this was a draft drawn by a paymaster of the U. States in his official capacity. A creditor of the goverment could not attach this debt, and can creditors of her assignee attach it?
Judge Ryland concurring, the judgment is affirmed.